### STAMMER v. HARMON.

(Supreme Court, Appellate Division, Third Department. May 2, 1906.)

VENDOR AND PURCHASER—CONTRACTS—CONSTRUCTION.

A memorandum for the sale of land stipulated that the vendor should sell certain premises to the purchaser as of a prior date for a fixed sum, payable in installments, that as soon as the vendor obtained a deed he should give the purchaser a contract according to the terms stated in the memorandum, and that the vendor should procure the deed and

give the contract within one year. *Held*, that the procuring of the title by the vendor within a year and a delivery of a new contract by him to the purchaser was a condition precedent to a demand for any part of the price.

Appeal from St. Lawrence County Court.

Action by Freeman P. Stammer against Eben Harmon. From a judgment of the County Court, reversing a judgment of the Justice's Court in favor of defendant, defendant appeals. Reversed, and the judgment of the justice affirmed.

The plaintiff F. F. Stammer, brought this action in a Justice's Court to recover the sum of $200, claimed to be due as a part of the purchase price upon a contract made between W. W. Stammer and the defendant, whereby defendant had agreed to purchase and W. W. Stammer had agreed to sell a certain farm for the price of $800. A copy of the contract so referred to in the complaint is as follows, viz.:

"Memorandum of an agreement, made this 20th day of September, 1901, between Warden W. Stammer and Eben Harmon, as follows: The said Stammer agrees to sell the Rushton premises of a little more than two hundred acres, situate in the town of Fine, and on which Harmon now resides, to the said Harmon, as of Nov. 1st, 1899, for the sum of eight hundred ($800) dollars, payable fifty dollars down, and at least fifty dollars and interest on unpaid sums each year for three years, and the balance in seven equal annual payments, with accrued interest on all sums unpaid, payable annually, with the right to pay more in sums not less than $25 at any time. The said Stammer reserves all sawing timber, both hard and soft, on that part of the premises lying between the river and the top of a large hill. In case the said Harmon shall cut any spruce or basswood on the remainder of the premises for sale, the said Stammer reserves $2 per cord for pulp wood and $4 per thousand for sawing timber and for stumpage, to be applied on contract. Harmon is to pay all taxes, and when the payments are fully made Stammer is to give the same kind of title which he gets from Mrs. Rushton. Harmon is to keep the buildings insured for the benefit of both parties and to keep the buildings and premises in as good condition as now. No live maple trees are to be cut in the sugar bush. As soon as the said Stammer gets his deed, he is to give to Harmon a contract on the above terms. Any payment is to be indorsed as of the time it is made. Until these payments are fully made, the said Harmon is to hold the premises as tenant. Stammer is to get deed and give contract within one year.

"W. W. Stammer.    [Seal.]
"Eben Harmon.     [Seal.]"

This plaintiff claims that he has subsequently purchased such farm and the contract aforesaid from W. W. Stammer, and that, as the assignee thereof, he is entitled to recover from the defendant the $200 due thereon. The answer of the defendant was a general denial, payment, and an indebtedness of $200 set up as a counterclaim. Upon the trial before a justice and a jury, the defendant claimed that the title to real estate came in question, and also that the total amount of the accounts exceeded $400, and therefore that the justice had no jurisdiction to try the action, and asked that it be dismissed, which motion was denied by the justice. The action then proceeded to trial, and the jury rendered a verdict of no cause of action, in favor of the defendant. From the judgment entered thereon, the plaintiff appealed to the County Court, where the judgment was reversed, and from such judgment of reversal this appeal is taken.

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.,

James C. Dolan, for appellant.
Earl Bancroft, for respondent.

PARKER, P. J. The question presented to us is whether the return of the justice, as it appears·in this record before us, shows any error for which the verdict and judgment rendered in his court should be reversed by the County Court. So far as the question of the justice's jurisdiction to hear the case is concerned, we may conclude, without discussion, that the justice's ruling thereon was correct, since no appeal has been taken therefrom by the defendant, and since the view which we take of the memorandum in question renders such question immaterial. No ruling was made against the defendant on the trial, except the refusal to nonsuit; and so the question is narrowed down to whether, upon the facts proven by the plaintiff, he had shown a cause of action against the defendant.

The memorandum of September 20, 1901, is not entirely a clear one, yet an examination of it, in my judgment, shows that it was not intended as a contract on defendant's part to purchase, and on W. W. Stammer's part to sell, the farm in question. It was an undertaking on W. W. Stammer's part that he would, within one year, acquire the title to the farm, and as soon as he had such title, and so was authorized to sell and convey, that he would then enter into a contract to sell and convey it to the defendant; and defendant on his part then agreed that he would enter into a contract to purchase said farm for the price and upon the terms as to payment which are therein stated. The defendant had been living on the farm, as a tenant, since November 1, 1899 (a tenant of whom does not appear, possibly of Stammer, who may have had a contract for the place, although that does not appear), and possibly may have cut some pulp wood and timber that it was contemplated should be applied upon the purchase price of the premises in the manner stated in this memorandum, and hence they agreed that the sale should be considered as made November 1, 1899; and, as I interpret this memorandum, it was intended that the contract that was to be given by W. W. Stammer as soon as he acquired his title, should be dated back to November 1, 1899. Neither party intended that any payments should be made upon this memorandum, or become due thereon, but that the provisions therein stated should be copied into and made the terms of the new contract to be thereafter given by Stammer. That should be dated November 1, 1899, and the payment of "$50 down" was intended to mean a payment of $50 as of that date, and further payments of $50 each were to be made for the three successive following years from that date, viz., up to November 1, 1902. By that date the title would have been acquired and the new contract ready for execution, and all payments then accrued would be due upon and indorsed on such new contract.

In such interpretation of this memorandum, it is plain that the procuring of title and delivery and execution of the new contract, so called, was a condition precedent to any demand for any part of the purchase price of such farm. If Stammer had procured the title and tendered such contract, the defendant would then have been bound to accept and execute it, and then make the payments as therein specified; for by signing the memorandum above set forth he had agreed to do so. But in such memorandum defendant nowhere agrees to purchase the

premises or to make any payment thereon. It is to be noticed that he nowhere·therein agrees to do anything. He merely signs such memorandum; and therefore the extent of his obligation thereon is to accept and execute the contract when tendered to him. That is all; and, when he has done that, then for the first time he has undertaken to purchase the farm and make the payments as specified in such contract. It is not claimed that W. W. Stammer ever tendered to defendant any contract whatever, such as by the memorandum he had agreed to do after procuring title to the farm; much less is it claimed that any such contract had ever been executed by the defendant. No part of the purchase price of such farm had ever become due and owing from defendant to W. W. Stammer, or to any assignee of his. Their plan that Stammer would get title to the farm and contract it to the defendant had entirely fallen through. It does not even appear that he (Stammer) got title to the farm within the year. For these reasons not even W. W. Stammer would have had any right to recover anything whatever upon such memorandum from the defendant, and the jury were correct in finding that the plaintiff had no claim against him thereon. . Judgment on their verdict should have been affirmed, instead of being reversed, by the County Court.

The judgment appealed from must therefore be reversed, and the judgment of the justice must be affirmed, with costs in the court below and of this appeal. All concur.